PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AJMAL JAHED,

　　　　　*Petitioner-Appellant,*

　　　　　v.

NEIL ACRI, Acting Field Office
Director for Detention and Removal
Operations,

　　　　　*Respondent-Appellee.*

No. 05-6489

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A27-289-645)

Argued: September 19, 2006

Decided: November 13, 2006

Before WILLIAMS and KING, Circuit Judges, and
James C. DEVER III, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

---

Dismissed by published opinion. Judge Williams wrote the opinion,
in which Judge King and Judge Dever joined.

---

## COUNSEL

**ARGUED:** Ronald Darwin Richey, Rockville, Maryland, for Appel-
lant. Ernesto Horacio Molina, II, UNITED STATES DEPARTMENT
OF JUSTICE, Office of Immigration Litigation, Washington, D.C.,
for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney,

George M. Kelley, III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia; Peter D. Keisler, Assistant Attorney General, Civil Division, David V. Bernal, Assistant Director, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

In this appeal from a final order of removal, we must determine whether the Board of Immigration Appeals (BIA) erred in rejecting Petitioner Ajmal Jahed's claim of United States citizenship. Jahed, a native of Afghanistan, contends that he attained derivative citizenship pursuant to 8 U.S.C. § 1432(a) after his parents' 1991 Pakistani divorce and upon his father's 1995 naturalization. Jahed, however, has failed to demonstrate that his parents were legally separated for purposes of United States immigration law. Because this failure is fatal to Jahed's claim of citizenship, we have no jurisdiction to review the BIA's final order of removal, and accordingly we dismiss the petition for review.

I.

Jahed was born in Afghanistan on May 7, 1979. His parents, Mohammed Zia Jahed and Aiesha Jahed, are both natives of Afghanistan. They married on June 15, 1955, and have six children. In 1984, fearing Communist forces in Afghanistan, Mohammed and his family fled to Pakistan, where they applied for refugee status at the United States embassy. The family then moved to the United States and received an adjusted status as aliens admitted for lawful permanent residence.

In December 1991, Mohammed and Aiesha went to Pakistan to choose a wife for one of their sons (not Jahed), and they had a disagreement over the choice of the wife. Because of this disagreement and Aiesha's lack of obedience, Mohammed decided to divorce his

wife at a refugee camp called Pubi. There, the divorce took place in accordance with Islamic law and was entered by an Imam, Mohamed Jan Afzali. Also in accordance with Islamic law, Mohammed was given custody of Jahed. On May 18, 1995, before Jahed's eighteenth birthday, Mohammed became a naturalized United States citizen.

In February 2001, Jahed was convicted in a Virginia court of two counts of carnal knowledge of a minor, in violation of Code of Virginia § 18.2-63. On September 3, 2003, the Immigration and Naturalization Service (INS)[1] commenced removal proceedings by issuing a Notice to Appear against Jahed. The Notice to Appear charged Jahed with being an alien removable from the United States based on his underlying conviction, which constituted an aggravated felony. *See* 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West 2005 & Supp. 2006) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). Jahed denied that he was an alien, claiming that he had acquired derivative citizenship in 1995 when his father became a naturalized citizen. Jahed also requested asylum, withholding of removal, and protection under the Convention Against Torture (the Convention).

The Immigration Judge (IJ) determined that Jahed was not a citizen of the United States but instead only a citizen of Afghanistan. The IJ based this ruling on his conclusion that Jahed's parents' Islamic divorce was not valid for purposes of United States immigration law, and thus, Jahed could not automatically acquire derivative citizenship. The IJ also concluded that Jahed was not eligible for asylum or withholding of removal because he was "convicted . . . of a particularly serious crime." 8 U.S.C.A. § 1158(b)(2)(A)(ii) (West 2005 & Supp. 2006). Finally, the IJ granted Jahed's application for deferral of removal under the Convention, finding that Jahed likely would be tortured upon return to Afghanistan because he was a Muslim who converted to Christianity.

Jahed appealed, and on July 16, 2004, the BIA remanded the case to the IJ because the hearing tape was defective. On September 21,

---

[1]The INS has since been consumed and reorganized under the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192.

2004, after a new hearing, the IJ entered an effectively identical order, denying Jahed's claims of citizenship, asylum, and withholding of removal, but granting Jahed's application for deferral of removal under the Convention. In resolving the citizenship claim, the IJ found that "under U.S. law and for [i]mmigration purposes, there was no legal separation under U.S. law of [Jahed's] parents, and therefore, [Jahed] did not obtain derivative citizenship." (J.A. at 488.) The BIA affirmed the IJ's decision on June 20, 2005, denying both Jahed's appeal and the Government's cross-appeal.

While Jahed's legal battle was ongoing in the immigration courts, on May 24, 2004, he also filed a 28 U.S.C. § 2241 habeas petition in the Eastern District of Virginia with respect to his continued detention awaiting removal. On March 3, 2005, the district court dismissed Jahed's petition for failure to exhaust administrative remedies, i.e., because the immigration courts had yet to reach a final decision on Jahed's numerous appeals.[2]

On March 25, 2005, Jahed filed a petition for review in this Court of the district court's habeas dismissal. This petition for review was filed prior to the BIA's final decision entered on June 20, 2005. To complicate matters further, Congress enacted the REAL ID Act that same summer. *See* REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231. The REAL ID Act eliminated access to habeas corpus for purposes of challenging a removal order. 8 U.S.C.A. § 1252(a)(5). In doing so, it instructed that all such challenges should proceed directly to the Courts of Appeals as petitions for review. *See Francois v. Gonzales*, 448 F.3d 645, 647 (3d Cir. 2006). Accordingly, we converted Jahed's appeal of the district court's habeas dismissal to a petition of review of the BIA's final order of removal.

---

[2]Jahed had a habit of appealing multiple orders against him, regardless of the orders' finality. He sometimes attempted to appeal to the BIA and this Court at the same time. For example, we twice dismissed earlier appeals and petitions by Jahed on July 15, 2004, No. 04-1366, and March 3, 2005, No. 04-2440, *cert. denied*, 126 S. Ct. 197 (2005).

## II.

Although 8 U.S.C.A. § 1252(a)(2)(C) (West 2005 & Supp. 2006) states that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense . . . ," we retain jurisdiction to determine jurisdiction. *See Argaw v. Ashcroft*, 395 F.3d 521, 523 (4th Cir. 2005) ("We have jurisdiction, however, to determine whether the facts that would deprive us of jurisdiction are present."). In other words, we have jurisdiction to determine whether Jahed is an alien, which would deprive us of further jurisdiction, or a national, which would free Jahed's petition for review from the constraints of § 1252(a)(2)(C).

Congress has detailed how we must review Jahed's nationality claim. If we find "from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, [we] shall decide the nationality claim." 8 U.S.C.A. § 1252(b)(5)(A) (West 2005 & Supp. 2006). If, however, we find that genuine issues of material fact do exist, we must "transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim." 8 U.S.C.A. § 1252(b)(5)(B). In making de novo review by the district court hinge on the existence of genuine issues of material fact, "Congress intended the language to be interpreted similarly to that in [Federal Rule of Civil Procedure] 56." *Agosto v. INS*, 436 U.S. 748, 754 (1978).

Because both parties (for the purposes of this petition) admit that (1) Jahed is an Afghani national born in Afghanistan, (2) Jahed's parents (while domiciled in Virginia) were divorced in Pakistan in accordance with Islamic law, (3) Jahed's father was given custody of Jahed pursuant to that divorce, and (4) after the Islamic divorce, but before Jahed turned eighteen, Jahed's father became a nationalized United States citizen, no genuine issues of material fact remain. We therefore conclude that the record here is sufficiently clear so that we can decide Jahed's nationality claim without transferring the proceeding to the district court.

### III.

There are "two sources of citizenship, and two only: birth and naturalization." *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898). It is within Congress's enumerated powers "[t]o establish an uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. Congress has "exclusive constitutional power" over nationalization, and therefore citizenship may be conferred upon foreign-born persons only by act of Congress. *INS v. Pangilinan*, 486 U.S. 875, 882 (1988).

Jahed claims that he acquired derivative citizenship via 8 U.S.C. § 1432(a), *repealed by* Pub. L. 106-395, § 104, which provided,[3] inter alia, that a child born outside of the United States of alien parents would become "a citizen of the United States upon fulfillment of the following conditions:"

> (3)   The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4)   Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5)   Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of . . . the parent naturalized under clause . . . (3) of this subsection . . . .

---

[3] 8 U.S.C. § 1432(a) has since been repealed by Act of Congress and replaced with 8 U.S.C.A. § 1431 (West 2005 & Supp. 2006), which, inter alia, grants derivative citizenship on a child upon the naturalization of one parent so long as the child resides in physical and legal custody of that parent. Jahed makes no argument that § 1431 is retroactive and applies to this case, and even if he did, such argument would fail because "[a]t all relevant times [— Jahed's birth, the family's move to the United States, his father's divorce, his father's naturalization, and his eighteenth birthday —] former § 1432(a) was in effect." *Bagot v. Ashcroft*, 398 F.3d 252, 257 n.3 (3d Cir. 2005).

8 U.S.C. § 1432(a).

The sole question before us is a legal one: whether Jahed acquired derivative citizenship upon his father's naturalization in 1995. Jahed contends that he became a citizen at that point because his parents were legally divorced in Pakistan in 1991, his father was granted custody of Jahed at that time, and the divorce and grant of custody should be recognized as a matter of comity. The Government, on the other hand, argues that the divorce and custody grant is not valid for the purposes of § 1432(a) because his parents were not domiciled in Pakistan at the time of their divorce. We agree in principle with the Government's argument.

"The general rule is that a [foreign] decree of divorce valid where rendered[4] is valid everywhere and will be recognized . . . under the principle of comity, provided that recognition would not contravene public policy." *Matter of Luna*, 18 I. & N. Dec. 385, 386 (BIA 1983) (footnote added). But the "foreign court must have jurisdiction to render a valid decree, . . . and a divorce obtained in a foreign country will not normally be recognized as valid if neither of the spouses had a domicile in that country . . . ." *Id.*

As an initial matter, we must decide which jurisdiction's law governs to determine whether that jurisdiction would recognize the Pakistani divorce as a matter of comity. Ordinarily, in the immigration context, the validity of a prior divorce is addressed to determine whether a subsequent marriage is lawful. *See, e.g.*, *Matter of Hosseinian*, 19 I. & N. Dec. 453 (BIA 1987). In such situations, the BIA "look[s] to the law of the state where the subsequent marriage was celebrated to determine whether or not that state would recognize the validity of the divorce." *Id.* at 455. "In this case, however, there is no subsequent marriage. Consequently we must decide whether . . . the divorce in question should be recognized on the basis of comity without any [single] state's law as a reference point." *Matter of Ma*, 15 I. & N. Dec. 70, 71 (1974); *see also Afeta v. Gonzales*, __ F.3d __, No. 05-1174 (4th Cir. Oct. 26, 2006) (applying uniform federal

---

[4]We assume, without deciding, that Pakistani law would treat an Islamic divorce between two parties domiciled in Virginia as valid in Pakistan.

law to question of whether there has been a "legal separation" under § 1432(a)).

In *Matter of Ma*, the BIA decided the validity of a Korean divorce of two Korean citizens who were not domiciled in Korea. *Matter of Ma*, 15 I. & N. Dec. at 71-72. The BIA found that although the divorce was valid where rendered, it was nonetheless "invalid in the United States for purposes of the immigration law." *Id.* at 72. The court considered the following factors in reaching that conclusion: (1) whether the parties were divorced in the same jurisdiction in which they were married; (2) whether they lived in the divorcing jurisdiction as husband and wife; (3) whether they were present in the jurisdiction at the time of the divorce or otherwise consented to personal jurisdiction; and (4) whether they were citizens of the country granting the divorce. *Id.* The BIA found that both parties were married and divorced in Korea, were citizens of Korea, and consented to the Korean divorce. Nonetheless, the BIA found the divorce invalid because they were "never domiciled together as husband and wife in Korea." *Id.*

This analysis dooms Jahed's claim. Jahed's parents were married in Afghanistan, but divorced in Pakistan. Although they both consented to the divorce in Pakistan and were physically present for the divorce, they were not citizens of Pakistan at the time, or at any time before or thereafter. And most important, Jahed's parents never established domicile in Pakistan. *See Matter of Luna*, 18 I. & N. Dec. at 386 ("The domicile of the parties has long been recognized as the primary, if not the exclusive, basis for the judicial power to grant a divorce."); *see also Williams v. North Carolina*, 325 U.S. 226, 229 (1945) ("Under our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicil[e].").

As a general matter, a domicile is understood to be "a person's true, fixed, principal and permanent home." *Black's Law Dictionary* 523 (8th ed. 2004). "Domicil[e] implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance." *Williams*, 325 U.S. at 229. To change domiciles, a person must intend to make the new place her home. *See, e.g.*, *Ecker v. Atl. Ref. Co.*, 222 F.2d 618, 621 (4th Cir. 1955) ("For the establishment of domicile the intention must be not

merely to live in the place but to make a home there." (internal quotation marks omitted)).

Although Jahed's parents traveled to Pakistan before coming to the United States in 1984, they did so for the purposes of fleeing the war in Afghanistan and requesting asylum at the United States embassy. And although they again traveled to Pakistan in 1991, they did so for the purpose of finding a wife for their son. They never traveled to Pakistan with any intent to make a home and remain there permanently. Rather, they traveled to Pakistan to undertake specific purposes, and Pakistan was therefore — for purposes of United States law — powerless to enter a divorce over the two Afghan nationals who were domiciled in the Commonwealth of Virginia. In short, their Pakistani divorce was "utterly lacking in extraterritorial validity." *Harrison v. Harrison*, 214 F.2d 571, 573 (4th Cir. 1954) (finding a Mexican divorce decree invalid because, inter alia, domicile was never established in Mexico).

In fact, the evidence suggests that even Jahed's parents did not view their Islamic divorce as a legal, civil divorce for purposes of United States immigration law. For example, in Jahed's father's 1995 citizenship application, both Jahed's mother and father claimed to be married and living together in 1995. Jahed's mother was naturalized in 2000, and in her May 27, 2000, interview with the INS, she stated that she was still married and living at the same address as the father. As late as 2000, then, the religious divorce that occurred in Pakistan in 1991 did not affect Jahed's parents' views of their marriage for purposes of United States immigration law.

In sum, neither of Jahed's parents were domiciled in Pakistan at the time of the divorce or prior to the divorce. Moreover, his parents were neither Pakistani citizens nor married in Pakistan. Therefore, for purposes of United States immigration law,[5] their Pakistani divorce was

---

[5]We note that even if we were to apply Virginia law, as the place of domicile, as opposed to uniform federal law, Jahed's claim would still fail. *See, e.g.*, *Corvin v. Commonwealth*, 108 S.E. 651, 653 (Va. 1921) (holding that when a person travels to a foreign jurisdiction without a determination to make the jurisdiction her legal domicile and obtains a

not valid and cannot be used to show that Jahed's parents were legally separated pursuant to § 1432(a).

### IV.

For the foregoing reasons, Jahed cannot show that his parents were legally separated for purposes of § 1432(a) at the time of his father's naturalization. Because Jahed cannot make this showing, we need not, and do not, decide whether the Pakistani award of custody was sufficient for purposes of the statute. Finally, because we determine that Jahed is an alien and there is no dispute over his prior conviction, we have no jurisdiction to review the BIA's final order of removal. *See* 8 U.S.C.A. § 1252(a)(2)(C); *Soliman v. Gonzales*, 419 F.3d 276, 280 (4th Cir. 2005) (holding that we must dismiss a petition for review of a person who is removable by reason of having committed a criminal offense if we conclude that the petitioner is (1) an alien and (2) has been convicted of an aggravated felony). Jahed's petition for review is therefore dismissed.

*DISMISSED*

---

divorce in that jurisdiction, the divorce is void); *Furman v. Furman*, 3 Va. Cir. 82, 82; 1983 Va. Cir. LEXIS 97, at *1 (Va. Cir. Feb. 9, 1983) (holding that a foreign divorce will not be recognized as a matter of comity in Virginia unless at least one of the spouses was a domiciliary in that country at the time the divorce was granted).