**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LISA A. JOHNSON; GILBERT A.
HERBERT, on behalf of themselves
and all others similarly situated,

        *Plaintiffs-Appellees,*

v.

ADVANCE AMERICA, CASH ADVANCE
CENTERS OF SOUTH CAROLINA,
INCORPORATED, d/b/a Advance
America Cash Advance Centers,
d/b/a Advance America,

        *Defendant-Appellant.*

No. 08-2186

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(2:07-cv-03447-PMD)

Argued: October 29, 2008

Decided: December 12, 2008

Before NIEMEYER, TRAXLER, and AGEE,
Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Traxler joined. Judge Agee wrote a
separate opinion concurring in part, dissenting in part, and
concurring in the judgment.

## COUNSEL

**ARGUED:** Barry Goheen, Michael C. Russ, KING & SPALDING, L.L.P., Atlanta, Georgia, for Appellant. Joe R. Whatley, Jr., WHATLEY DRAKE & KALLAS, LLC, New York, New York, for Appellees. **ON BRIEF:** Jonathan R. Chally, KING & SPALDING, L.L.P., Atlanta, Georgia; William Douglas Smith, JOHNSON SMITH HIBBARD & WILDMAN LAW FIRM, L.L.P., Spartanburg, South Carolina; Thomas C. Brittain, HEARN, BRITTAIN & MARTIN, P.A., Myrtle Beach, South Carolina, for Appellant. J. Preston Strom, Jr., Mario A. Pacella, STROM LAW FIRM, L.L.C., Columbia, South Carolina, for Appellees.

## OPINION

NIEMEYER, Circuit Judge:

Lisa Johnson and Gilbert Herbert, citizens of South Carolina, filed an action on behalf of themselves and all other "citizens of South Carolina," who were similarly situated, against Advance America, Cash Advance Centers of South Carolina, Inc., alleging that Advance America, in making "payday loans" to the plaintiffs, violated South Carolina law, which prohibits unconscionable loans and requires good faith and fair dealing in contracts. Alleging minimal diversity under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), Advance America removed the action to federal court under 28 U.S.C. § 1453(b). It claimed that it satisfied the requirement of "minimal diversity," as defined in § 1332(d)(2)(A), because either (1) it is a citizen of Delaware, where it was incorporated, even though it is also a citizen of South Carolina, where it has its principal place of business, or (2) some of the class members had moved from South Carolina and were citizens of other States.

On the plaintiffs' motion to remand, the district court found that Advance America failed to establish minimal diversity under § 1332(d)(2)(A) because, even though Advance America is a citizen of Delaware, it is also a citizen of South Carolina, and all members of the plaintiff class are citizens of South Carolina. The court further found that the class action fell within the "home-state exception" to CAFA jurisdiction in 28 U.S.C. § 1332(d)(4)(B) because in a class limited by definition to "citizens of South Carolina," at least two-thirds of the class members necessarily are citizens of South Carolina. Accordingly, the district court remanded the case to state court. We granted Advance America's petition for permission to appeal the remand order under 28 U.S.C. § 1453(c).

Because Advance America cannot carry its burden of demonstrating that any member of the plaintiffs' class is a citizen of a State "different from" Advance America, as required by 28 U.S.C. § 1332(d)(2)(A), we affirm. Advance America is a citizen of South Carolina, albeit also a citizen of Delaware, and the class is defined to include *only* citizens of South Carolina, thus excluding persons who may have moved from South Carolina and established citizenship elsewhere at the time the action was commenced.

I

In their complaint, filed in the Georgetown County Court of Common Pleas in South Carolina, Johnson and Herbert alleged that they entered into numerous payday loans with Advance America and that under the loan agreements, they agreed to repay the principal amount plus 15% interest two weeks after receiving the loan. They alleged that they currently carry open loans with Advance America, which they renew every two weeks by paying only the interest with additional payday loans. Because of fixed financial obligations, which nearly equal their incomes, they alleged that they are now unable to pay the loans.

Johnson and Herbert claimed that Advance America, in issuing the payday loans, violated South Carolina statutory law prohibiting unconscionable loan agreements, S.C. Code § 37-5-108, and South Carolina common law duties of good faith and fair dealing. They alleged that Advance America failed to conduct credit checks to verify customers' finances and ability to repay loans before entering into the agreements and that the agreements contained unconscionable arbitration clauses. For relief, they seek a declaratory judgment that Advance America's conduct violated South Carolina law; injunctive relief prohibiting Advance America from issuing any payday loans until it modifies its business practices; and damages.

Johnson and Herbert purport to represent themselves and a class of other South Carolina citizens who are similarly situated. In their complaint, they defined the proposed class to contain three subclasses, each defined as follows:

> *Injunctive Relief Class*: All citizens of South Carolina who are domiciled in South Carolina and who borrowed money from Defendant in the three years preceding the filing of the complaint or who will borrow money from Defendant in the future.

> *Damages Subclass One*: All citizens of South Carolina who borrowed money from Defendant in the three years preceding the filing of this complaint whose total monthly obligations exceeded 55% of their gross monthly income.

> *Damages Subclass Two*: All citizens of South Carolina who renewed a loan with Defendant by repaying only the interest and received a new loan.

Proceeding under CAFA, Advance America filed a notice of removal to federal court under the authority of 28 U.S.C. § 1453(b), alleging that federal jurisdiction was conferred by

28 U.S.C. § 1332(d)(2). Johnson and Herbert filed a motion to remand, claiming that Advance America had improperly removed the action to federal court because minimal diversity did not exist among the parties under § 1332(d)(2)(A). Moreover, they claimed that, even if there was minimal diversity under § 1332(d)(2)(A), CAFA's home-state exception, 28 U.S.C. § 1332(d)(4)(B), defeated federal jurisdiction.

The district court granted plaintiffs' motion by entry of an order of remand dated April 25, 2008. We granted Advance America's petition for permission to appeal, by order dated October 29, 2008. This appeal is thus limited to whether minimal diversity under CAFA exists in this case and whether CAFA's home-state exception applies.

## II

Congress enacted CAFA in 2005 to address abuses of the class action device. Such abuses, it found, had the effect of, among other things, "undermin[ing] . . . the concept of diversity jurisdiction . . . in that State and local courts are—

> (A)  keeping cases of national importance out of Federal court;
>
> (B)  sometimes acting in ways that demonstrate bias against out-of-State defendants; and
>
> (C)  making judgments that impose their view of the law on other States and bind the rights of the residents of those States."

CAFA § 2(a)(4), Pub. L. No. 109-2, 119 Stat. 4, 5 (2005), 28 U.S.C. § 1711 note. In light of these findings, Congress enacted CAFA to

> restore the intent of the framers of the United States Constitution by providing for Federal court consider-

ation of interstate cases of national importance under
diversity jurisdiction.

CAFA § 2(b)(2). CAFA amended, among other things, the
concept of diversity jurisdiction for class actions to require
only minimal diversity, 28 U.S.C. § 1332(d)(2). It also liberal-
ized the requirements for removing class actions to federal
courts, 28 U.S.C. § 1453(b).

Specifically, as relevant to this appeal, the diversity
requirements were amended to confer jurisdiction on district
courts over "any civil action in which the matter in contro-
versy exceeds the sum or value of $5,000,000, exclusive of
interest and costs, and is a class action in which . . . any mem-
ber of a class of plaintiffs is a citizen of a State different from
any defendant." 28 U.S.C. § 1332(d)(2)(A).

The burden of establishing federal jurisdiction on the
removal of a class action is on the removing party. *See Strawn
v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008).

Advance America contends that the minimal diversity
requirement is satisfied in this case. It argues first that
because Advance America is incorporated under the laws of
Delaware and is therefore a Delaware citizen, its citizenship
is different from the citizenship of the class members.
Although Advance America is also a citizen of South Caro-
lina, where it has its principal place of business, it asserts that
its "dual citizenship in South Carolina does not destroy the
minimal diversity created by certain alleged South Carolina
citizens suing a Delaware corporation." Stated otherwise, it
maintains that "Advance America's dual citizenship is suffi-
cient to establish minimal diversity under CAFA," regardless
of the citizenship of the plaintiffs.

Advance America is correct in noting that it, as a corpora-
tion, has dual citizenship for purposes of determining diver-
sity jurisdiction. "[A] corporation shall be deemed to be a

citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The statute's use of the conjunctive gives dual, not alternative, citizenship to a corporation whose principal place of business is in a State different from the State where it is incorporated. Therefore, for purposes of diversity jurisdiction, Advance America is a citizen of both Delaware, its State of corporation, *and* South Carolina, the State of its principal place of business. Yet, Advance America relies on its Delaware citizenship to create minimal diversity, ignoring the fact that it is also a citizen of South Carolina. Whether it is entitled to rely on only one citizenship where its other citizenship would destroy federal jurisdiction is resolved by the statutory language itself and by the burden of proof imposed on removing parties.

As noted, the burden of establishing diversity jurisdiction remains with Advance America. Thus, to establish minimal diversity under CAFA, Advance America must demonstrate that "any member of [the] class of plaintiffs is a citizen of a State *different from* any defendant." 28 U.S.C. § 1332(d)(2)(A) (emphasis added). It cannot, however, demonstrate that the plaintiffs, who are South Carolina citizens, are citizens of a State *different from Advance America*. This is because Advance America is a citizen of South Carolina, even though it is also a citizen of Delaware. Because Advance America has South Carolina citizenship, it cannot carry its burden of demonstrating that the citizenship of the South Carolina class members is *different from* its own. The language of the statute imposes a requirement on Advance America to prove the negative—i.e. that it is *not* a citizen of South Carolina—and that it cannot do.[1] Accordingly, we reject its

---

[1]Because we conclude that Advance America's dual citizenship precludes it from meeting its burden in this case of demonstrating jurisdiction under CAFA, we need not determine whether Advance America and plaintiffs are citizens of different States for Article III purposes. *Cf. Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 577 n.6 (2004). Article III gives federal courts jurisdiction over controversies "between Citizens of different States." U.S. Const. art. 3, § 2, cl. 1.

argument that its dual citizenship entitles it to rely on its Delaware citizenship to establish minimal diversity under CAFA. *See Sundy v. Renewable Envtl. Solutions, LLC*, No. 07-5069-CV-SW-ODS, 2007 WL 2994348, at *3 n.4 (W.D. Mo. Oct. 10, 2007) ("The court does not agree with Defendant's suggestion that minimal diversity exists unless a member of the class is a citizen of *both* Missouri *and* Delaware"). *But see Fuller v. Home Depot Servs., LLC*, No. 1:07-CV-1268-FLV, 2007 WL 2345257 (N.D. Ga. Aug. 14, 2007) (reaching the opposite conclusion).

## III

Advance America also contends that the district court erred in "rejecting undisputed evidence establishing that minimal diversity on the Plaintiffs' side exists." As Advance America explains:

> While Plaintiffs' proposed class definition is purportedly limited to "citizens of South Carolina," the Complaint does not define when such citizenship is to be determined. As a result, under Plaintiffs' proposed class definition, fairly read, Plaintiffs' class contains any individual who (1) entered into a [payday loan] with Advance America and (2) was *at any time* a South Carolina citizen. Advance America demonstrated to the district court that many of these individuals are now, and were at the time Plaintiffs filed their Complaint (the time relevant for determining diversity jurisdiction under CAFA), citizens of states other than South Carolina.

(Emphasis added). Advance America presented affidavits demonstrating that at least 19 customers had moved out of South Carolina and "resided" in 19 other States.

Johnson and Herbert respond that Advance America "mischaracterizes" the definition of the class they purport to repre-

sent by suggesting that it includes persons who were "*at any time* a South Carolina citizen." We agree.

The complaint defines three subclasses whom plaintiffs purport to represent, and each is defined as a group of "citizens of South Carolina." For example, the class for injunctive relief defines the class as:

> *All citizens of South Carolina* who are domiciled in South Carolina and who borrowed money from Defendant in the three years preceding the filing of the complaint or who will borrow money from Defendant in the future.

(Emphasis added). In short, each of the subclasses is defined as a group of South Carolina citizens who engaged in certain transactions or satisfy certain factual criteria. Thus, under the definition in the complaint, if one of Advance America's customers had in fact established domicile outside of South Carolina before the complaint was filed, as Advance America's affidavits suggest,[2] such customers would not be "citizens of

---

[2]While we assume for purposes of our opinion that some of the persons who obtained payday loans had moved from South Carolina and were thereafter "citizens" of States other than South Carolina, Advance America's affidavits only indicated that these persons "resided" outside of South Carolina. For purposes of diversity jurisdiction, residency is not sufficient to establish citizenship. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998). To be a citizen of a State, a person must be both a citizen of the United States and a domiciliary of that State. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). Domicile requires physical presence, coupled with an intent to make the State a home. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *Jahed v. Acri*, 468 F.3d 230, 236 (4th Cir. 2006); *Webb v. Nolan*, 484 F.2d 1049, 1051 (4th Cir. 1973) ("The law seems clear that to effect a change of citizenship from one state to another there must be residence in the new domicile and an intention to remain there permanently or indefinitely"). Advance America's affidavits are in this manner deficient in demonstrating that the 19 persons are "citizens" of a State different from South Carolina.

South Carolina" at the time the complaint was filed and therefore would not be members of the proposed class. *See* 28 U.S.C. § 1332(d)(7) (providing that citizenship is to be determined as of the date of the complaint or other paper that first indicates the existence of federal jurisdiction).

To be sure, the plaintiffs in this case have taken care to restrict the scope of their allegations so as to avoid federal jurisdiction under CAFA. Yet the plaintiffs, as masters of their complaint, can choose to circumscribe their class definition in this way. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005) (holding that because the plaintiffs did not name as a defendant a party who had an interest in the action, the defendant need not have alleged that party's citizenship upon removal); *id.* at 91 ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties" (internal quotation marks and citations omitted)); *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996) ("[T]he plaintiff is master of his complaint[,] and [this] generally permits plaintiffs to 'avoid federal jurisdiction by exclusive reliance on state law'" (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987))). In this case, the plaintiffs, as masters of their complaint, limited the class to citizens of South Carolina, determined as of the time the complaint was filed. *See* 28 U.S.C. § 1332(d)(7).

Thus, under the class definition set forth in the complaint, if a putative class member had in fact changed his or her State of domicile by the time the complaint had been filed, then the person no longer would qualify as a member of the class and accordingly would have no impact on whether minimal diversity exists. And if the person established citizenship in another State after the complaint was filed, it would not affect jurisdiction that existed at the time the complaint or notice of removal was filed. *See Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824); *see also Grupo Dataflux*, 541 U.S. at 570-71; 28 U.S.C. § 1332(d)(7).

Accordingly, we also reject Advance America's second basis for claiming that minimal diversity exists in this case.

IV

Because we conclude that Advance America has not demonstrated the minimal diversity required by 28 U.S.C. § 1332(d)(2)(A), we need not reach the issue whether the home-state exception in § 1332(d)(4)(B) was satisfied. But we observe, as a matter of logic, that if the class is limited to citizens of South Carolina, it could hardly be claimed that two-thirds of the class members were not citizens of South Carolina.

V

CAFA has indeed relaxed the requirements for demonstrating diversity jurisdiction and for removing class actions to allow federal courts more readily to supervise those class actions that are "interstate cases of national importance." *See* CAFA § 2(b)(2). But in enacting this legislation to remedy state court abuses of the class action device, Congress did not give federal courts jurisdiction over *all* class actions, specifically excluding those consisting of "primarily local matters." *See* Sen. Rep. No. 109-14, at 6 (2005) ("This Committee believes that the current diversity and removal standards as applied in interstate class actions have facilitated a parade of abuses, and are thwarting the underlying purpose of the constitutional requirement of diversity jurisdiction. [CAFA] addresses these concerns by establishing 'balanced diversity[,]' a rule allowing a larger number of class actions into federal courts, *while continuing to preserve primary state court jurisdiction over primarily local matters*") (emphasis added)). Nor did Congress purport to alter through CAFA our federal system of dual sovereignty where we presume state courts to be competent. *See Tafflin v. Levitt*, 493 U.S. 455, 458-59 (1990).

This case, we conclude, falls into that class of cases which Congress found appropriate to leave to the States under CAFA. The plaintiffs are South Carolina citizens and the class they purport to represent is comprised exclusively of South Carolina citizens. The defendant is a citizen of South Carolina, albeit also a citizen of Delaware. All the transactions addressed by the complaint took place in South Carolina and are alleged to have violated only South Carolina law. Undoubtedly, the plaintiffs could have expanded their action to fall under the provisions of CAFA, but, as the masters of their complaint, they opted to bring their suit only under South Carolina law and to name only those parties who were South Carolina citizens involved in entirely South Carolina transactions. This they were entitled to do. *See Lincoln Prop.*, 546 U.S. at 91.

The district court's order of remand is accordingly

*AFFIRMED*.

AGEE, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment:

I agree with the majority opinion that Advance America fails to satisfy the requirements of 28 U.S.C. § 1332(d)(2)(A) on the basis of its dual citizenship. I write separately because I respectfully disagree, in part, with the conclusion in the majority opinion that the language of the Complaint has limited the classes of plaintiffs to only South Carolina citizens as of the time the Complaint was filed. Nonetheless, I concur in the judgment of the majority because Advance America failed to meet its burden of proof to establish the citizenship of any plaintiff in a state other than South Carolina.

The Complaint sets out three classes of plaintiffs as follows:

> Injunctive Relief Class: All citizens of South Carolina who *are* domiciled in South Carolina and who

> borrowed money from Defendant in the three years preceding the filing of the complaint or who will borrow money from Defendant in the future.
>
> Damages Subclass One: All citizens of South Carolina who borrowed money from Defendant in the three years preceding the filing of this complaint whose monthly obligations exceeded 55% of their gross monthly income.
>
> Damages Subclass Two: All citizens of South Carolina who renewed a loan with Defendant by repaying only the interest and received a new loan.

(J.A. 11) (emphasis added).

Advance America contends that these class definitions include "any individual who (1) entered into a deferred presentment services agreement with Advance America and (2) was *at any time* a South Carolina citizen." (Br. Appellant 17.) Advance America then argues that the classes would include plaintiffs "who borrowed money" from it while a South Carolina citizen, but who thereafter became citizens of another state before the Complaint was filed. The majority finds this argument unpersuasive based on its reading of the classes as defined in the Complaint and concludes that "if one of Advance America's customers had in fact established domicile outside of South Carolina before the complaint was filed . . . such customers would not be 'citizens of South Carolina' at the time the complaint was filed and therefore would not be members of the proposed class." *Supra* at 9-10. For the reasons that follow, I agree with the majority as to the Injunctive Relief Class but disagree as to Damages Subclass One and Damages Subclass Two (collectively, the "Damages Subclasses").

The plain language of the Complaint defining the Injunctive Relief Class describes its members in the *present* tense,

that is, South Carolina citizens "who *are* domiciled in South Carolina." (Emphasis added). This language establishes a class of plaintiffs who *are* South Carolina citizens even though the ultimate class membership is further restricted to those South Carolina citizens "who borrowed money from Defendant in the three years preceding the filing of the complaint." If a person *is* not "domiciled in South Carolina" at the time the Complaint was filed then that person, by definition, cannot be a member of the Injunctive Relief Class.

The majority opinion correctly points out that the plaintiffs are "masters of their complaint," *supra* at 10, and have considerable leeway in defining who is, and is not, within the class or classes of the Complaint. In this case, the plaintiffs have circumscribed the membership of the Injunctive Relief Class to include only South Carolina citizens, at least as of the filing of the Complaint. However, for whatever reason, the plaintiffs have not similarly delineated the members of the Damages Subclasses.

The definition of the members of the Damages Subclasses are not drawn in the present tense as is the Injunctive Relief Class. The limiting phrase "who *are* domiciled in South Carolina," or other similar denotation of present status, is missing. Instead, the Damages Subclasses are defined in the *past* tense, that is, South Carolina citizens "who *borrowed* money from Defendant in the three years preceding the filing of this complaint" or who "*renewed* a loan with Defendant." Thus, to be a member of the Damages Subclasses, a person need only have borrowed from Advance America over the last three years, or renewed a loan, while a South Carolina citizen. These past actions while a South Carolina citizen speak not at all to that person's *subsequent* status as a South Carolina citizen at the time the Complaint was filed.

The plaintiffs, as master of their complaint, have defined the members of the Damages Subclasses in a way that could include members who were South Carolina citizens when they

initially borrowed or renewed a loan, but who ceased to be South Carolina Citizens before the Complaint was filed. The failure of the Complaint to place a certain temporal requirement on class membership leaves open the potential membership to persons who were not South Carolina citizens when the Complaint was filed, even though they were South Carolina citizens when their transactions with Advance America took place. If such persons with other than South Carolina citizenship do exist in fact, then the minimal diversity requirements enunciated in CAFA would be met and jurisdiction in the district court would be established. 28 U.S.C. § 1332(d)(2) (2006).

However, as the majority opinion correctly notes, "the burden of establishing jurisdiction remains with Advance America," *supra* at 7, the party seeking removal to federal court. "[T]he party seeking to invoke federal jurisdiction must . . . demonstrate the basis for federal jurisdiction." *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008). Even though, as pointed out above, the Damages Subclasses *could* include non South Carolina citizens, it is Advance America's burden to show that there were indeed such members. Advance America failed to meet its burden of proof to show diverse citizenship in the Damages Subclasses as a matter of law. The only evidence proffered by Advance America to sustain its burden of proof was an affidavit declaring that certain customers "changed their residence and, therefore, citizenship." (J.A. 22.) As the majority recognizes in footnote 2, citizenship is determined not by residence but by the jurisdiction in which a citizen is domiciled. "[S]tate citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile, and the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998) (internal citation omitted).

As Advance America's only evidence of non South Carolina citizenship is a possible change of residence, not domi-

cile, it fails to meet its burden of proof as a matter of law. Accordingly, even though I disagree with the majority's conclusion that the Complaint's definition of the Damages Subclasses limits their membership to citizens of South Carolina at the time the Complaint was filed, Advance America has failed to show any non South Carolina citizen actually exists. I thus concur in the judgment of the majority because Advance America has failed to demonstrate the existence of federal jurisdiction under 28 U.S.C. § 1332(d)(2).