**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-141**

---

SKYLINE TOWER PAINTING, INC.,

>Petitioner,

v.

ELIZABETH L. GOLDBERG; MYRIAM RALSTON; BENJAMIN ROBERTS; JOSHUA C. TOHN; MARIA HAGEN; CHRISTINE SAJECKI; JOHN RALSTON; HANNAH ROHER,

>Respondents.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

>Amicus Curiae.

---

**No. 24-142**

---

TELEVISION TOWER, INC.,

>Petitioner,

v.

ELIZABETH L. GOLDBERG; MYRIAM RALSTON; BENJAMIN ROBERTS; JOSHUA C. TOHN; MARIA HAGEN; CHRISTINE SAJECKI; JOHN RALSTON; HANNAH ROHER,

>Respondents.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

      Amicus Curiae.

----

**No. 24-1250**

----

ELIZABETH L. GOLDBERG; MYRIAM RALSTON; BENJAMIN ROBERTS; JOSHUA C. TOHN; MARIA HAGEN; CHRISTINE SAJECKI; JOHN RALSTON; HANNAH ROHER,

      Plaintiffs - Appellees,

v.

TELEVISION TOWER, INC.,

      Defendant - Appellant,

and

SKYLINE TOWER PAINTING, INC.,

      Defendant.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

      Amicus Curiae.

----

**No. 24-1251**

----

ELIZABETH L. GOLDBERG; MYRIAM RALSTON; BENJAMIN ROBERTS; JOSHUA C. TOHN; MARIA HAGEN; CHRISTINE SAJECKI; JOHN RALSTON; HANNAH ROHER,

2

Plaintiffs - Appellees,

v.

SKYLINE TOWER PAINTING, INC.,

Defendant - Appellant,

and

TELEVISION TOWER, INC.,

Defendant.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

Amicus Curiae.

---

Appeals from the United States District Court for the District of Maryland, at Baltimore. Julie R. Rubin, District Judge.  (1:23-cv-01708-JRR)

---

Argued:  May 8, 2025                                    Decided:  August 1, 2025

---

Before DIAZ, Chief Judge, and WYNN and THACKER, Circuit Judges.

---

Appeals affirmed and petitions dismissed by published opinion.  Judge Wynn wrote the opinion, in which Chief Judge Diaz and Judge Thacker joined.

---

**ARGUED:**  Roy D. Prather, III, BEVERIDGE & DIAMOND PC, Baltimore, Maryland; Thomas V. McCarron, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellant.  Andrew K. O'Connell, Ronald Eugene Richardson, MURPHY, FALCON & MURPHY, Baltimore, Maryland, for Appellees.  Grace Greene Simmons, MCGUIREWOODS, LLP, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Collin S. Gannon, Baltimore, Maryland, James B. Slaughter, BEVERIDGE & DIAMOND P.C.,

3

Washington, D.C., for Appellant Television Tower, Inc.  Paul N. Farquharson, Richard J. Medoff, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellant Skyline Tower Painting, Inc.  Jonathan D. Urick, Kevin R. Palmer, UNITED STATES CHAMBER LITIGATION CENTER, Washington, D.C.; Matthew A. Fitzgerald, MCGUIREWOODS LLP, Richmond, Virginia, for Amicus Curiae.

———————————

WYNN, Circuit Judge:

In this matter, defendants Skyline Tower Painting, Inc. ("Skyline") and Television Tower, Inc. ("TTI") sought review of the district court's remand order, which was based on the Class Action Fairness Act's local-controversy exception. Defendants filed both a petition for permission to appeal under 28 U.S.C. § 1453 and a regular notice of appeal under 28 U.S.C. § 1291.

Consistent with the three other circuits that have considered this issue, we conclude that § 1291 provides a valid basis for appellate review here and, therefore, we dismiss the § 1453 petitions for permission to appeal as unnecessary.

On the merits, we affirm the district court's application of the local-controversy exception and its remand to state court.

I.

A.

The allegations in the complaint are as follows. TTI, a Maryland corporation, owns a 1,300-foot-tall TV tower in Baltimore. "A total of 2.5 tons of [red] lead-based paint was applied to the TV Tower during its construction" in 1959, and TTI has known for decades that the tower was covered in lead-based paint. J.A. 12.[1] TTI also knew that the paint would deteriorate over time, as it has, including chipping and peeling.

Recently, "TTI contracted with Skyline" (a Colorado corporation with its principal place of business in Nebraska) to clean the TV tower using high-pressure water, a process

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

5

known as hydroblasting. J.A. 13. TTI and Skyline knew that hydroblasting would dislodge and disperse the lead paint in a manner that "was inherently reckless and dangerous, presenting a high risk of harm to the public." J.A. 13–14. Yet TTI failed to verify that Skyline was appropriately accredited, licensed, or trained to perform the work—which, it turns out, it was not. Nor did Defendants obtain the appropriate permit or notify the Maryland Department of the Environment before undertaking the work.

Nevertheless, under TTI's direction, Skyline began hydroblasting the tower on May 28, 2022, a project that continued through August 17, 2022.[2] The hydroblasting activity "dislodged lead-based paint chips and paint dust" from the tower. J.A. 15. The paint chips and dust were "carried by gravity, thermal dynamics and wind away from the TV Tower onto other real property," spreading "for at least 4000 feet in every direction." *Id.*

The eight named plaintiffs and others found red paint chips throughout the community, including at a grocery store.[3] Their properties each "tested positive for the presence of lead paint chips and dust" between November 2022 and February 2023. J.A. 15–16. Plaintiffs are concerned about their health and that of their neighbors (due to the hazards posed by lead paint, especially for children), their property values (as they must now disclose the lead exposure to any potential buyers), and the costs of remediation.

B.

In May 2023, Plaintiffs filed a putative class action against TTI and Skyline in

---

[2] Ultimately, municipal authorities issued a stop-work order due to the lack of proper permits.

[3] The Maryland Department of the Environment reported that, as of June 22, 2022, thirty-five residents had reported finding lead paint chips on their properties.

6

Maryland state court. They defined the class as "all real property owners whose property is located within a 4000-foot radius of the TV Tower on or after May 28, 2022," the date on which hydroblasting began. J.A. 21. They asserted claims for negligence against TTI (count I) and Skyline (count II); negligent hiring, retention, and supervision against TTI (count III); and strict liability for an abnormally dangerous activity against both Defendants (count IV). They sought compensatory and punitive damages, plus injunctive relief in the form of remediation.

In June 2023, Defendants removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"). Plaintiffs quickly moved to remand the action pursuant to CAFA's local-controversy exception. The district court granted Plaintiffs' motion in March 2024. *Goldberg v. Skyline Tower Painting Inc.*, No. 1:23-cv-01708, 2024 WL 1050942, at *16 (D. Md. Mar. 10, 2024).

Defendants each filed petitions for permission to appeal the district court's decision pursuant to 28 U.S.C. § 1453. The following day, each Defendant also filed a notice of appeal as of right under 28 U.S.C. § 1291. We consolidated the four cases and entered an order deferring consideration of the petitions for permission to appeal pending formal briefing.

## II.

Before we can reach the merits of the district court's remand order, we must determine whether we have jurisdiction to consider the appeal at all. Defendants sought appellate review through two channels: as of right under § 1291, and by permission under § 1453. We conclude that Defendants appropriately appealed as of right under § 1291, and

7

therefore we need not consider whether we would grant permission to appeal under § 1453.[4]

A.

We begin with an overview of the relevant statutory landscape.

The mine run of appeals that come before us are brought pursuant to notices of appeal filed under the Federal Rules of Appellate Procedure and invoke 28 U.S.C. § 1291, which gives us "jurisdiction of appeals from all final decisions of the district courts" within this Circuit.[5] *Id.* In civil cases invoking our § 1291 jurisdiction, the appellant must timely file the notice of appeal for us to properly exercise appellate jurisdiction. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007).

Our jurisdiction under § 1291 is, however, limited by certain other provisions. Relevant here is 28 U.S.C. § 1447(d), which provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," unless it was removed pursuant to 28 U.S.C. § 1442 (which relates to suits against federal officers)

---

[4] Plaintiffs did not challenge Defendants' right to appeal under § 1291 in their response brief, instead raising an argument on this point for the first time at oral argument. However, because the question implicates this Court's appellate jurisdiction, we must evaluate the issue despite any forfeiture. *See Palmer v. City Nat'l Bank, of W. Va.*, 498 F.3d 236, 240 (4th Cir. 2007) ("Whether at the suggestion of the parties or otherwise, this Court has an obligation to verify the existence of appellate jurisdiction before considering the merits of an appeal.").

[5] Some non-final decisions may also be appealed under § 1291 pursuant to the collateral order doctrine, "a 'practical construction' of § 1291's 'final decision rule,' under which a 'small class' of decisions that do not end the litigation on the merits may still qualify for appellate review." *Dubon v. Jaddou*, 109 F.4th 307, 311 (4th Cir. 2024) (citations omitted) (first quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867, 872 (1994); and then quoting *Campbell-McCormick, Inc. v. Oliver*, 874 F.3d 390, 395 (4th Cir. 2017)).

or § 1443 (which relates to civil-rights cases). Still, "[r]emand orders that are *not* subsumed under the § 1447(d) prohibition may be appealed [as final judgments] pursuant to 28 U.S.C. § 1291." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 614 (4th Cir. 2001) (emphasis added).

We also receive some appeals through other statutory channels. Relevant here, in certain circumstances "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed" pursuant to CAFA. 28 U.S.C. § 1453(c)(1). One question before us is whether this statute provides the *exclusive* means for appeal where it applies.

For Defendants to invoke § 1291 and appeal as of right in this case, therefore, they must clear two hurdles. First, our review must not be precluded by 28 U.S.C. § 1447(d)'s limitation on appellate review of remand orders. Second, Defendants must not be statutorily *required* to use the petition avenue provided by 28 U.S.C. § 1453(c)(1). For the reasons that follow, we conclude that Defendants can surmount both obstacles; consequently, we may review their timely appeals pursuant to § 1291.[6]

### B.

"Appellate review of a district court order remanding a removed case to state court is circumscribed by" 28 U.S.C. § 1447(d). *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 398 (4th Cir. 2024). That statute "provides broadly that, with some exceptions not applicable here, '[a]n order remanding a case to the State court from

---

[6] We thank amicus, the Chamber of Commerce of the United States of America, for helpful briefing and oral argument on this point.

which it was removed is not reviewable on appeal or otherwise.'" *Protopapas v. Travelers Cas. & Sur. Co.*, 94 F.4th 351, 356 (4th Cir. 2024) (quoting 28 U.S.C. § 1447(d)). On its face, then, § 1447(d) could be understood to preclude review of this appeal under § 1291.

But that is not the whole story. In 1976, the Supreme Court took a much narrower view of the limitation on appellate review mandated by § 1447(d) than the plain text of that provision standing alone might suggest. In *Thermtron Products, Inc. v. Hermansdorfer*, the Court explained that § 1447(d) "must be construed together" with an adjacent provision, § 1447(c), meaning "that only remand orders issued under § 1447(c) and invoking the grounds specified therein . . . are immune from review under § 1447(d)." *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 345–46 (1976), *abrogated on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). "[T]he grounds for remand recognized by § 1447(c)" are a "defect in removal procedure" or a "lack of subject-matter jurisdiction."[7] *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995). "Thus, § 1447(d) bars appellate court review of remand orders" only "when they are [colorably] based on" one of those grounds. *Protopapas*, 94 F.4th at 356.

Neither of these limitations—lack of subject matter jurisdiction or a nonjurisdictional defect in the removal process—applies here. There is no dispute that Defendants properly removed this case to federal court pursuant to CAFA, *see Goldberg*,

---

[7] Congress modified 28 U.S.C. § 1447(c) in 1996. *See* Act of Oct. 1, 1996, Pub. L. No. 104-219, § 1, 110 Stat. 3022, 3022. However, the Supreme Court has continued to rely on its pre-amendment case law interpreting § 1447(c) and (d). *E.g.*, *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 640 (2006). We and other circuits have done the same. *E.g.*, *Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 673 (4th Cir. 2018); *accord Watson v. City of Allen*, 821 F.3d 634, 639 n.3 (5th Cir. 2016) (collecting cases).

10

2024 WL 1050942, at *3, or that CAFA gives the district court original jurisdiction over this matter, 28 U.S.C. § 1332(d)(2).

Rather, Plaintiffs invoke the local-controversy exception to CAFA jurisdiction. But as explained further below, even if Plaintiffs are correct that it applies, that exception does not deprive the district court of jurisdiction; it merely provides that a district court *possessing* such jurisdiction must *decline to exercise* it. *Id.* § 1332(d)(4)(A); *see Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 n.6 (4th Cir. 2017). And because the use of the word "'defect' [in § 1447(c)] refers to a failure to comply with the statutory requirements for removal," *Bynum v. Norfolk S. Ry. Co.* (*In re Norfolk S. Ry. Co.*), 756 F.3d 282, 292 (4th Cir. 2014) (quoting *Kamm v. ITEX Corp.*, 568 F.3d 752, 755 (9th Cir. 2009)), we agree with the circuit courts' consensus that a remand order based on one of CAFA's exceptions to the otherwise valid exercise of CAFA jurisdiction does not demonstrate a defect in the removal procedure, *see, e.g.*, *Watson v. City of Allen*, 821 F.3d 634, 639 (5th Cir. 2016); *Graphic Commc'ns Loc. 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 636 F.3d 971, 975 (8th Cir. 2011); *Simring v. GreenSky, LLC*, 29 F.4th 1262, 1265–66 (11th Cir. 2022).

Sections 1447(c) and (d) thus pose no bar to an appeal as of right under § 1291 in this circumstance.[8] And, as noted, "[r]emand orders that are *not* subsumed under the

---

[8] The inapplicability of § 1447(c) to remand motions based on CAFA exceptions raises the question of when parties seeking remand must file such motions, because § 1447(c) supplies the deadline for the motions that fall within its ambit (thirty days for defects in removal procedure and no deadline for lack of subject matter jurisdiction), and there is no other applicable statute supplying a deadline. Several circuits have used a

11

§ 1447(d) prohibition may be appealed pursuant to 28 U.S.C. § 1291." *Hinson*, 239 F.3d at 614 (emphasis added). So, notwithstanding § 1447(d), § 1291 is an available pathway for appeal of an order remanding a case based on CAFA's local-controversy exception—unless, as we discuss next, § 1453 precludes Defendants from using that pathway. *Accord Cheapside Mins., Ltd. v. Devon Energy Prod. Co.*, 94 F.4th 492, 496 (5th Cir. 2024) ("[Section] 1447(d) does not trump § 1291 to deny appeal of a remand order based on the local controversy exception[.]"); *Simring*, 29 F.4th at 1265–66 (11th Cir.); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1229 (8th Cir. 2012), *abrogated in part on other grounds by BP P.L.C. v. Mayor of Balt.*, 593 U.S. 230 (2021); 16 *Wright & Miller's Federal Practice & Procedure* § 3931.2 (3d ed. 2012 & Supp. 2025).

## C.

That leaves the question of whether § 1453 provides the exclusive avenue for appeal here, precluding Defendants from utilizing § 1291 even though they otherwise would be entitled to do so. We agree with the three courts of appeals that have addressed this question and conclude that § 1453 is nonexclusive.

In 2001, we held broadly that "[r]emand orders that are not subsumed under the § 1447(d) prohibition may be appealed pursuant to 28 U.S.C. § 1291." *Hinson*, 239 F.3d at 614. But four years later, Congress enacted CAFA, and with it the provision for review codified at § 1453(c). Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 5, 119 Stat.

---

"reasonable time" rule for remand motions where § 1447(c) does not apply. *Watson*, 821 F.3d at 640 (collecting cases). We need not resolve the matter in this case because Defendants did not argue that Plaintiffs' motion—which was filed within thirty days of removal, as calculated by Federal Rule of Civil Procedure 6(a)(1)(C)—was untimely.

4, 12–13 (codified as amended at 28 U.S.C. § 1453(c)). So, we must consider whether that enactment created an exception to the general reviewability of remand orders under § 1291 for remands based on CAFA's exceptions.

Section 1453(c) provides that "[s]ection 1447 shall apply to any removal of a case under [CAFA], except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." 28 U.S.C. § 1453(c)(1). If the appellate court "accepts" such an appeal, "the court shall complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which" it accepts the appeal,[9] unless it grants an extension "for any period of time" with the agreement of all parties or "for a period not to exceed 10 days" if the "extension is for good cause shown and in the interests of justice." *Id.* § 1453(c)(2)–(3). "If a final judgment on

_____

[9] Section 1453 states that the deadline is "not later than 60 days *after the date on which such appeal was filed*." 28 U.S.C. § 1453(c)(2) (emphasis added). This "creates an ambiguity—the appeal might be thought 'filed' when the application is made, but it also may be thought 'filed' when the court 'accepts an appeal.'" *Wright & Miller*, *supra*, § 3931.2. This Court, along with all other circuits to have considered the issue, has adopted the latter interpretation. *Scott*, 865 F.3d at 193 n.2; *accord Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 72–73 (1st Cir. 2014); *DiTolla v. Doral Dental IPA of N.Y.*, 469 F.3d 271, 274–75 (2d Cir. 2006); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 n.7 (3d Cir. 2009); *Patterson v. Dean Morris, L.L.P.*, 444 F.3d 365, 368 (5th Cir. 2006); *In re Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 849, 852–53 (6th Cir. 2012); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006); *Atwell v. Bos. Sci. Corp.*, 740 F.3d 1160, 1166 (8th Cir. 2013); *Amalgamated Transit Union Loc. 1309 v. Laidlaw Transit Servs., Inc.*, 435 F.3d 1140, 1144–45 (9th Cir. 2006); *Pritchett v. Off. Depot, Inc.*, 420 F.3d 1090, 1093 (10th Cir. 2005); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1162–63 (11th Cir. 2006).

the appeal . . . is not issued" by the deadline (including any extension), "the appeal shall be denied." *Id.* § 1453(c)(4).

Section 1453 thus presents a much stricter avenue for appeal than § 1291—for the parties and for the court. The § 1453 petitioner must seek permission to appeal and demonstrate to the appellate court why appeal is necessary, *see Dominion Energy v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 334 (4th Cir. 2019) (describing this Court's "non-exhaustive list of [eight] factors" for evaluating CAFA petitions for permission to appeal); the § 1291 appellant need only file a timely notice of appeal. The § 1453 petitioner has just ten days to file this detailed petition; the § 1291 appellant must merely file a notice of appeal, which includes quite limited details, within either thirty or sixty days, depending on the case. *See* Fed. R. App. P. 3(c), 4(a). And the court must render judgment within at most seventy days from the date it accepts the appeal, unless all parties agree to an extension; whereas an appellate court considering a § 1291 appeal faces a much more lenient schedule.

Given the much stricter limits imposed by § 1453(c), it would, at first blush, seem odd to allow parties to circumvent those limits merely by filing an appeal as of right under § 1291. One might think that interpreting the statutes in this way would "render[] [§ 1453(c)] surplusage or violate[] the interpretive principle that the specific controls the general." *United States v. Minton*, 99 F.4th 692, 695 (4th Cir. 2024). After all, why would *any* party subject itself to those limitations when it could just file a notice of appeal?

Upon closer review, however, there are situations where a party might prefer § 1453(c)—or have no choice but to rely on it. A party might prefer the quick turnaround

14

mandated by § 1453(c). More importantly, a party might have no other option for appeal. An order *denying* a motion to remand is not immediately appealable as of right under § 1291, *see Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996), but is immediately appealable by permission under § 1453(c)(1). Similarly, an order precluded from appeal by § 1447(d)—such as one concluding that there was a defect in the removal itself under CAFA—is not appealable under § 1291, but would be appealable by permission under § 1453(c)(1). It thus appears that the two statutes are complementary, not contradictory. *See Lara-Aguilar v. Sessions*, 889 F.3d 134, 142 (4th Cir. 2018) (explaining that "the general-specific rule of [statutory] construction applies only when specific and general statutory provisions conflict" (internal quotation marks omitted)).

Additionally, nothing in the plain text of § 1453 suggests it is the exclusive avenue for appealing all remand orders based on CAFA exceptions. To be sure, the statute states that "[s]ection 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d)," we may accept petitions under § 1453. This could be read to suggest that Congress expected § 1447(d) to preclude *all* appeals of remand orders based on CAFA exceptions, except those permitted through § 1453.

However, as discussed, decades before CAFA's enactment, the Supreme Court interpreted § 1447(d) more narrowly than its plain text might suggest. *See Thermtron Prods.*, 423 U.S. at 345–46. It reiterated that holding twice in the decade leading up to the enactment of CAFA. *See Things Remembered*, 516 U.S. at 127; *Quackenbush*, 517 U.S. at 711–12. We generally presume Congress legislates against the backdrop of "relevant judicial precedent." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233 (2020) (quoting *Merck*

15

*& Co. v. Reynolds*, 559 U.S. 633, 648 (2010)). So, we can presume that Congress was aware that a remand order like the one at issue here might be appealable under § 1291 even without the enactment of § 1453, and that therefore its intention was to provide an alternative avenue for appeal. Put another way, in the absence of a direct statutory command stating that § 1453 provides the exclusive avenue for appeals of remand orders, and bound as we are by the Supreme Court's reading of § 1447, we decline to read into the statute assumptions that would contradict preexisting Supreme Court precedent in order to eliminate the normal pathway of appellate review under § 1291.

For all these reasons, we agree with the three courts of appeals that have squarely addressed the question that § 1453 does not supersede § 1291 for an appeal of an order granting remand in a CAFA case, but rather that both statutes provide avenues for appeal. *See Cheapside Mins.*, 94 F.4th at 496 (5th Cir.) ("[Section] 1453(c) did not supplant § 1291 and become the lone vehicle by which an appellant can obtain review of a final order remanding class action litigation to state court; it simply permits certain appeals denying remand that §§ 1447(d) and 1291 would have otherwise prohibited."); *Jacks*, 701 F.3d at 1228–29 & n.2 (8th Cir.) (reviewing appeal pursuant to § 1291 despite having previously denied § 1453 petition); *Simring*, 29 F.4th at 1266 (11th Cir.) (stating that § 1291 "provides an independent basis for our appellate jurisdiction," separate from § 1453). *But cf. Reece v. AES Corp.*, 638 F. App'x 755, 765 (10th Cir. 2016) (interpreting prior Tenth Circuit case law to "impl[y]" that "all appeals from orders *granting* remand motions must come within the ten-day window of § 1453" (citing *Weber v. Mobil Oil Corp.*, 506 F.3d 1311 (10th Cir. 2007))).

Accordingly, we conclude that we have jurisdiction over this matter pursuant to Defendants' timely notices of appeal. That being so, we have no need to review their petitions for permission to appeal, and we dismiss those petitions as unnecessary.

III.

Having satisfied ourselves of our appellate jurisdiction, we turn to the merits and consider whether the district court erred when it held that it was required to remand the case to state court pursuant to CAFA's local-controversy exception. While we review the district court's ultimate legal decision to grant a motion to remand to state court de novo, *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 964 (4th Cir. 2013), we review its related factfinding for clear error, *Stewart v. Entergy Corp.*, 35 F.4th 930, 932 (5th Cir. 2022) (per curiam); *cf. Scott*, 865 F.3d at 194.

"Congress enacted CAFA in 2005 to expand subject matter jurisdiction in the federal courts over 'interstate' class actions 'of national importance.'" *Dominion Energy*, 928 F.3d at 329–30 (quoting Class Action Fairness Act § 2(b)(2), 119 Stat. at 5) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)). "CAFA sought to accomplish that purpose by amending the diversity jurisdiction statute" in order to "extend[] federal jurisdiction to those class action proceedings that satisfy three requirements: (1) the putative class has [at least] 100 members (numerosity); (2) the amount in controversy exceeds five million dollars, exclusive of interest and costs (amount in controversy); and (3) the parties are minimally diverse in citizenship (minimal diversity)." *Id.* at 329–30 (citing 28 U.S.C. § 1332(d)(2), (5)(B)).

Where these requirements are met, the district court has "original jurisdiction" over

17

the action, 28 U.S.C. § 1332(d)(2), unless it "solely involves" one of three statutorily defined types of claims, *id.* § 1332(d)(9), which are "generally called the 'covered security' exception, the 'internal affairs' exception, and the 'securities-related' exception," *Dominion Energy*, 928 F.3d at 330–31. Here, there is no dispute that Defendants properly removed this case to federal court pursuant to CAFA, giving the district court original jurisdiction over this matter. *See Goldberg*, 2024 WL 1050942, at *3.

Even where a district court has original jurisdiction pursuant to CAFA, however, it can—or must—abstain from exercising that jurisdiction in certain circumstances. *E.g.*, *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016) (explaining that, "[r]ather than divesting a court of jurisdiction," the exceptions described below "'operate[] as an abstention doctrine'" (quoting *Graphic Commc'ns*, 636 F.3d at 973 (8th Cir.))); *accord Watson*, 821 F.3d at 639 (5th Cir.); *Mullen v. GLV, Inc.*, 37 F.4th 1326, 1328 (7th Cir. 2022); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023 (9th Cir. 2007); *Hunter v. City of Montgomery*, 859 F.3d 1329, 1334 (11th Cir. 2017); *see also Scott*, 865 F.3d at 196 n.6 ("In CAFA-exception cases, the court has necessarily determined that jurisdiction exists and is only considering whether the exceptions impose a limit.").

Section 1332(d)(3) provides the circumstance when a district court *may* decline to exercise CAFA jurisdiction, which is known as the "discretionary exception." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021) (citing 28 U.S.C. § 1332(d)(3)). Additionally, § 1332(d)(4) provides that "[a] district court *shall* decline to exercise [CAFA] jurisdiction" when one of two exceptions applies. 28 U.S.C. § 1332(d)(4) (emphasis added). These mandatory exceptions are commonly known as the "local

18

controversy exception," *Quicken Loans*, 737 F.3d at 962 (citing 28 U.S.C. § 1332(d)(4)(A)), and the "home-state exception," *Johnson v. Advance Am.*, 549 F.3d 932, 933 (4th Cir. 2008) (citing 28 U.S.C. § 1332(d)(4)(B)). Here, Plaintiffs invoked the local-controversy exception.

"The elements of the local controversy exception are as follows: (1) more than two-thirds of the members of the proposed plaintiff class are citizens of the state where the suit was filed originally; (2) at least one defendant (a) is a defendant from whom members of the plaintiff class are seeking 'significant relief,' (b) is a defendant whose conduct 'forms a significant basis' for the proposed plaintiff class's claims, and (c) is a citizen of the state in which the action originally was filed; (3) the principal injuries stemming from the conduct alleged in the complaint occurred in the state where the action was filed originally; and (4) in the three years before the filing of the class action complaint, no other similar class action was filed against any of the defendants on behalf of the same or other class." *Quicken Loans*, 737 F.3d at 964 (quoting 28 U.S.C. § 1332(d)(4)(A)).

The parties agree that the third and fourth elements are satisfied here, but they dispute the first and second. The district court found all elements satisfied and granted Plaintiffs' motion to remand. We agree with the district court and therefore affirm.

A.

Before turning to the two disputed elements, we address the question of Plaintiffs' burden. "Under CAFA, the removing party bears the burden of establishing federal jurisdiction over a class action, but the party seeking remand has the burden of proving that one of CAFA's three exceptions to removal applies." *Dominion Energy*, 928 F.3d at 335–

19

36. And we have held that the burden on the removing party is "to prove [that] CAFA jurisdiction exists by a preponderance of the evidence." *Scott*, 865 F.3d at 195. But we have not specified the standard by which the party seeking remand must carry *its* burden to show that an exception applies.[10] *E.g.*, *Dominion Energy*, 928 F.3d at 335–36; *Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681 (4th Cir. 2018).

As we have recognized in unpublished authority, however, the circuits that have considered this question are unanimous that the appropriate standard is a preponderance of the evidence.[11] *Pfohl v. Saber Healthcare Grp., LLC*, 784 F. App'x 137, 140 (4th Cir. 2019) (per curiam); *see McLaren v. UPS Store Inc.*, 32 F.4th 232, 242 n.8 (3d Cir. 2022); *Louisiana ex rel. Div. of Admin. v. I3 Verticals Inc.*, 81 F.4th 483, 489 (5th Cir. 2023); *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 388–89 (6th Cir. 2016); *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 584 (7th Cir. 2017); *Adams v. W. Marine Prods.*, 958 F.3d 1216, 1221 (9th Cir. 2020); *Marcus & Millichap*, 991 F.3d at 1155 (11th Cir.); *see also Lax v. APP of N.M. ED, PLLC*, Nos. 22-2057, 22-2058, 2022 WL 2711230, at *3 (10th Cir. July 13, 2022); *Wright & Miller*, *supra*, § 3724 & n.21 (collecting cases).

---

[10] The same appears to be true of several sister circuits. *See Kress Stores of P.R., Inc. v. Wal-Mart P.R., Inc.*, 121 F.4th 228, 238 (1st Cir. 2024) (per curiam); *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010); *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1093 (8th Cir. 2021); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262–63 (10th Cir. 2014).

[11] Skyline has repeatedly suggested that the Fifth Circuit uses a different, higher standard, "reasonable certainty." J.A. 105 (quoting *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 338 (5th Cir. 2016)); *accord* Oral Arg. at 45:18–45:48, https://www.ca4.uscourts.gov/OAarchive/mp3/24-0141-20250508.mp3. However, the Fifth Circuit has recently clarified that the case Skyline quotes to support this point "simply restates the same preponderance standard in different language." *Louisiana ex rel. Div. of Admin. v. I3 Verticals Inc.*, 81 F.4th 483, 490 (5th Cir. 2023).

Still, in support of this conclusion, the circuits have largely either not explained their reasoning, or provided a rationale with which we are unable to agree: that "[a] district court makes factual findings regarding jurisdiction under a preponderance of the evidence standard." *Adams*, 958 F.3d at 1221 (quoting *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013)). That is true, as far as it goes. *See Scott*, 865 F.3d at 195 (noting that, "[o]nce [the plaintiff] challenged [the defendant]'s allegations through a motion to remand, [the defendant] was required to prove CAFA jurisdiction exists by a preponderance of the evidence"). But, as discussed, the application of a CAFA *exception* under § 1332(d)(3) or (4) is *not* jurisdictional, because it does not defeat the district court's original jurisdiction; rather, it permits or mandates abstention. *E.g.*, *Dutcher*, 840 F.3d at 1190.

Perhaps for that reason, "[s]ome district courts" have held plaintiffs to a "less[er]" standard than a preponderance of the evidence, "embracing a reasonable-probability standard or something akin to it." *Reece*, 638 F. App'x at 768 (10th Cir.) (collecting cases). The Tenth Circuit considered this option in its unpublished decision in *Nichols v. Chesapeake Operating, LLC*, but rejected it in favor of "the more exacting preponderance-of-the-evidence standard" because "[t]hat standard is consistent with the 'strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Nichols v. Chesapeake Operating, LLC*, 718 F. App'x 736, 739 n.3 (10th Cir. 2018) (quoting *Dutcher*, 840 F.3d at 1190).

We agree. CAFA specifies no standard of proof for this issue. "Faced with" textual "silence, courts usually apply the default preponderance standard." *E.M.D. Sales, Inc. v.*

21

*Carrera*, 604 U.S. 45, 52 (2025). Nothing in CAFA's text, structure, or purpose rebuts that presumption; rather the opposite. As we have recognized, "we are obliged to construe and apply CAFA's grant of federal court jurisdiction broadly, and to apply the three removal exceptions in a narrow fashion." *Dominion Energy*, 928 F.3d at 336. Holding plaintiffs to a burden more lenient than a preponderance would not honor that obligation. At the same time, given that the defendants bear the burden to *establish jurisdiction*, whereas plaintiffs' burden concerns a nonjurisdictional question, we do not think that (absent statutory language requiring it) the burden ought to be *higher* on plaintiffs than it is on defendants. *Cf. Mondragon*, 736 F.3d at 886 ("The burden of proof placed upon a plaintiff [seeking to invoke the local-controversy exception] should not be exceptionally difficult to bear."); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 814 (5th Cir. 2007) ("Absent specific language in the statute specifying a different evidentiary standard, we employ [for purposes of the local-controversy exception] the time-honored standard routinely applied to the fundamental question of citizenship: proof by a preponderance of the evidence.").

We therefore join our peer circuits in concluding that parties seeking remand must show that a CAFA exception applies by a preponderance of the evidence.[12]

---

[12] We recognize that, where no evidence has been submitted and the matter is to be decided solely on the pleadings—as with the "at least one defendant" element discussed below, *see infra* Part III.C—the language of "preponderance of the evidence" is an ill fit. For this reason, in the related context of the removing party's burden to establish CAFA jurisdiction in the first place, the First Circuit has instead used the language of "reasonable probability," while emphasizing that the standard is "for all practical purposes identical to the preponderance standard adopted by several circuits." *Amoche v. Guarantee Tr. Life Ins.*

B.

The first element of the local-controversy exception that Plaintiffs must establish by a preponderance of the evidence is that "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of" Maryland. 28 U.S.C. § 1332(d)(4)(A)(i)(I). Defendants argue that Plaintiffs have not carried their burden on this

---

*Co.*, 556 F.3d 41, 50 (1st Cir. 2009) ("There was no error in the district court's discussion of [the defendant]'s burden in terms of the preponderance of the evidence. Yet because questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the removing defendant's burden is better framed in terms of a 'reasonable probability,' not a preponderance of the evidence."). For simplicity, we use the language of "preponderance of the evidence" regardless of whether the matter is considered on the pleadings alone, but we raise the First Circuit's point to the extent it is helpful for thinking about what this standard means in the context of a pleadings-only inquiry.

Relatedly, Skyline suggests that there is a circuit split on the question of "whether a court, in reviewing a remand motion, may consider materials outside of the pleadings . . . such as was submitted and considered by the district court here." Oral Arg. at 14:19–14:35; *accord* Skyline Opening Br. at 15–16. However, the circuit split pertains only to those elements of the local-controversy exception for which the statute specifically uses the words "sought" and "alleged" (namely, the significant-basis and significant-relief prongs). Some circuits have held that this statutory language limits the district court to considering only the complaint for those prongs. *E.g.*, *Kaufman*, 561 F.3d at 157 (3d Cir.); *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1016 (9th Cir. 2011). Other circuits disagree. *E.g.*, *Atwood v. Peterson*, 936 F.3d 835, 840 (8th Cir. 2019) (per curiam) (considering affidavits in evaluating significant-basis prong); *Evans*, 449 F.3d at 1167 (11th Cir.) (same, for both significant-basis and significant-relief prongs). But because the parties relied only on Plaintiffs' complaint in making their arguments related to those aspects of the local-controversy exception, the question of whether extrinsic evidence can be considered for *those* prongs is not presented in this case. And we are not aware of any authority holding that plaintiffs cannot produce extrinsic evidence to support their burden for purposes of the citizenship prong. To the contrary, several circuits have held that, where the defendant challenges the citizenship element and the class is not already definitionally limited to citizens of a particular state, "there must ordinarily be at least some facts in evidence from which the district court may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception." *Mondragon*, 736 F.3d at 884 (collecting cases). We therefore conclude that Plaintiffs could properly introduce evidence related to citizenship.

23

point. We agree with the district court that they have.

The citizenship element can be satisfied by definitionally limiting the class to citizens of the state in question. *E.g.*, *In re Sprint Nextel Corp.*, 593 F.3d 669, 676 (7th Cir. 2010); *cf. Advance Am.*, 549 F.3d at 937 (4th Cir.) (similar). But Plaintiffs did not do that here; rather, the proposed class is "all real property owners whose property is located within a 4000-foot radius of the TV Tower on or after May 28, 2022." J.A. 21. There is no dispute that the covered area falls entirely within Maryland, so the only question is whether Plaintiffs have sufficiently shown that at least two-thirds of these property owners are Maryland citizens.

The only evidence before us consists of two affidavits provided by a paralegal, Denise Greeley, that Plaintiffs attached to their motion to remand and related reply.[13] (Defendants did not separately put forward any evidence.) Greeley explained that she used web tools "to geographically map a 4000-foot radius from the TV Tower" and "determine the postal addresses for the [2,785] properties located in" that area. J.A. 143. She then used "the Maryland State Department of Assessments and Taxation's ('SDAT') Real Property Data Search tool" and "Business Entity Data Search tool" to identify the owners for each property. J.A. 101. She counted individuals as citizens only if they listed a Maryland

---

[13] Plaintiffs sought to provide additional evidence through representations at oral argument. Because our conclusion is the same with or without this belated evidence, we need not decide whether we can consider it on this nonjurisdictional question. *Compare Williams v. Kincaid*, 45 F.4th 759, 776 n.10 (4th Cir. 2022) (noting general principle that "we are a court of review, not of first view" (quoting *United States v. Buster*, 26 F.4th 627, 636 n.3 (4th Cir. 2022))), *with Moses Enters., LLC v. Lexington Ins. Co.*, 66 F.4th 523, 526 n.1 (4th Cir. 2023) (noting that, for *jurisdictional* purposes, new information may be considered on appeal pursuant to 28 U.S.C. § 1653).

24

address as their "principal residence." *Id.* She counted businesses as citizens only if they were "either organized under Maryland law or had [their] principal place of business in Maryland." *Id.* The properties also included 80 local governmental properties. J.A. 143. Greeley explained that, including the governmental properties, 2,416 of the owners (about 87%) were Maryland citizens; excluding them, 2,336 (about 84%) were. The district court credited this evidence and thus concluded that Plaintiffs had satisfied their burden to show that more than two-thirds of the members of the proposed class were Maryland citizens.

We agree with the district court's decision to credit Greeley's citizenship analysis as to the property owners who are either businesses or natural persons. We therefore do not need to consider the governmental properties, as Plaintiffs satisfy the citizenship prong with or without them.

1.

We begin with the businesses. For purposes of CAFA, every business entity— whether a corporation or an unincorporated association like an LLC—is deemed to be a citizen of the state where it was incorporated or under whose laws it was organized, as well as the state where it has its principal place of business.[14] *See Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 701–05 (4th Cir. 2010) (citing 28 U.S.C. § 1332(c)(1), (d)(10)). This is the exact definition Greeley averred she used in searching the business-entity class members on Maryland's websites. *See* J.A. 101 ("If a 4000 Foot Property owner

---

[14] CAFA thus alters the "traditional rule" for diversity jurisdiction, under which "a limited liability company's 'citizenship is that of its members.'" *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 701 (4th Cir. 2010) (quoting *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004)).

was a business . . . that was either organized under Maryland law or had its principal place of business in Maryland, I noted the chart with a yes [to indicate it was a citizen].").

Defendants briefly contend that Plaintiffs inappropriately assumed that the principal office address supplied by the Maryland websites was the same as the "principal place of business," which, in the jurisdictional context, is a term of art referring to a business's "nerve center." Skyline Opening Br. at 11 (quoting *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 104 (4th Cir. 2011)); *see* TTI Opening Br. at 5 n.3. However, even assuming that this jurisdictional definition applies to the citizenship aspect of the local-controversy exception, the website Greeley relied on defines the "[p]rincipal [o]ffice [a]ddress" it cites for each business as "the address of the principal physical office location of the business in its home state or country." *General Information*, Md. Bus. Express, https://egov.maryland.gov/BusinessExpress/EntitySearch [https://perma.cc/ LS4Z-4C9P] (last visited July 29, 2025) (input a business name and click "Search"; click on the business entity; then click on the information icon ("i") next to "Principal Office"). Defendants provide no reason why "the principal physical office location of the business in its home state or country" would not equate to the business's nerve center, and it strikes us as perfectly logical that it would. Certainly, we see no clear error in the district court's implicit conclusion that this definition satisfied Plaintiffs' preponderance-based burden.

## 2.

That leaves the more complicated question of the individual property owners. While CAFA defines the term "citizen" for corporations and unincorporated associations, it provides no definition for individuals. We therefore will presume, for purposes of this

26

analysis, that "citizen" carries the same meaning for the local-controversy exception under § 1332(d)(4)(A) as it does for diversity jurisdiction under § 1332(a). *See Hargett v. RevClaims, LLC*, 854 F.3d 962, 965 (8th Cir. 2017). Under that definition, "[a] person is a citizen of a state only if she is a citizen of the United States and a domiciliary of that state," that is, someone who "has an intention to remain in the state indefinitely." *Scott*, 865 F.3d at 195.

The assumption that the local-controversy exception uses the same *definition* of citizenship for individual class members as does the diversity-jurisdiction provision does not, however, resolve what *evidence* a plaintiff must produce to establish citizenship. In the context of diversity jurisdiction, residency alone is insufficient to establish citizenship. *Id.* But in the context of CAFA's local-controversy exception, we think that residency suffices to create a rebuttable presumption of citizenship.

The Sixth Circuit persuasively discussed this issue in *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383. There, the court gave a historical overview of the longstanding "rebuttable presumption that a person's residence is his domicile." *Id.* at 390. It further explained that, while the "principle" that residence alone is insufficient to show citizenship "also enjoys a rich pedigree in our law," the latter rule emerged in the context of *federal subject-matter jurisdiction*, which is, of course, highly circumscribed. *Id.* at 391. Thus, the court noted, in 1878, the Supreme Court rejected the notion that "a general allegation of residence" was sufficient to demonstrate citizenship and therefore support federal jurisdiction. *Id.* (quoting *Robertson v. Cease*, 97 U.S. (7 Otto) 646, 649 (1878)). But, "[b]y tracing the origin of the 'mere averment of residency' line of cases, we see that

27

the residency-domicile presumption was not rejected because it was specious (indeed, *Robertson* could 'not . . . den[y] that there is some force in the[ ] suggestion[ ]'), but because, *in the unique context of federal diversity jurisdiction*, a contrary presumption of constitutional import takes precedence." *Id.* at 392 (emphasis added) (citation omitted) (quoting *Robertson*, 97 U.S. at 649).

However, the local-controversy exception is not jurisdictional. *See Scott*, 865 F.3d at 196 n.6 (citing *Mason*, 842 F.3d at 392). Instead, we must be guided by considerations of statutory interpretation. And here, "Congress has expressly directed [federal] courts to decline jurisdiction over local controversies," *Mason*, 842 F.3d at 394, while "providing for Federal court consideration of interstate cases of national importance," Class Action Fairness Act § 2(b)(2), 119 Stat. at 5.

Certainly, "we are obliged to construe and apply CAFA's grant of federal court jurisdiction broadly, and to apply the three removal exceptions in a narrow fashion." *Dominion Energy*, 928 F.3d at 336. But this is because of CAFA's "objective of ensuring that interstate class action claims of national importance are heard and resolved in the federal courts." *Id.* at 338. At the same time, as several circuits have emphasized, "[t]he citizenship inquiry under the local controversy exception should not be 'exceptionally difficult,' but instead 'practical and reasonable.'" *Mason*, 842 F.3d at 392 (citations omitted) (first quoting *Mondragon*, 736 F.3d at 886; and then quoting *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 572 (5th Cir. 2011) (per curiam)); *accord Adams*, 958 F.3d at 1223 ("[R]equiring a district court to 'examin[e] the domicile of every proposed class member before ruling on the citizenship requirement' would render class actions

28

'totally unworkable.'" (quoting *Preston*, 485 F.3d at 816)); *cf. In re Sprint Nextel Corp.*, 593 F.3d at 675 ("Given that there are probably hundreds of thousands of putative class members, if not more, it would be infeasible to document each class member's citizenship individually, but the district court could have relied on evidence going to the citizenship of a representative sample.").

Considering these competing interests, we agree with the Sixth Circuit that the "centuries-old inference that a person's residence is presumptively his domicile" "fits particularly well in the CAFA exception context, where the moving party is tasked with demonstrating a fact-centered proposition about a mass of individuals, many of whom may be unknown at the time the complaint is filed and the case removed to federal court." *Mason*, 842 F.3d at 392, 394. Where a plaintiff class presents evidence that a class member is a resident of a given state, it is eminently reasonable for the district court to adopt a rebuttable presumption that the class member is a citizen of that state. Such a presumption does not undermine CAFA's "goal" of "keep[ing] *interstate* actions in federal court and truly *intrastate* actions in the state courts."[15] *Adams*, 958 F.3d at 1223 (emphasis added).

---

[15] In fact, the CAFA Senate Report suggests that Congress anticipated that residency alone could be enough to support application of the local-controversy exception. *See* S. Rep. No. 109-14, at 39–40 (2005) ("The proponents of applying the [local-controversy] exception . . . must demonstrate that a supermajority of the class members are local *in the sense that they all reside in the forum state*." (emphasis added)); *id.* at 27 (stating that CAFA "leaves in state court . . . class actions brought against a company in its home state, in which 2/3 or more of the class members are also residents"); *id.* at 28–29 (stating that, for the local-controversy exception to apply, "[t]he class must be primarily local, meaning that more than two-thirds of class members must be residents of the state in which the action was filed"). Notably, "[b]oth the Supreme Court and our Court have heretofore had occasion to rely on [this] Senate Report." *Dominion Energy*, 928 F.3d at 336 n.11.

29

In fact, it promotes it. *See* Stephen J. Shapiro, *Applying the Jurisdictional Provisions of the Class Action Fairness Act of 2005: In Search of A Sensible Judicial Approach*, 59 Baylor L. Rev. 77, 135 (2007) (arguing that, when courts "ma[k]e it exceedingly difficult for plaintiffs to prove the two-thirds citizenship requirement," they "us[e] the burden of proof to produce a result that fails to give a reasonable scope to the local exceptions").

We therefore join the Sixth Circuit in holding that, in evaluating the citizenship aspect of the local-controversy exception to CAFA, a district court does not err when it adopts a rebuttable presumption that evidence of residency demonstrates citizenship. *See Mason*, 842 F.3d at 390–91. We further note that some other circuits have signaled openness to this line of reasoning.[16] *See Hollinger*, 654 F.3d at 571, 573–74 (5th Cir.) (stating that "[e]vidence of a person's place of residence . . . is prima facie proof of his domicile" and that "where a proposed class is discrete in nature, a common sense presumption should be utilized in determining whether citizenship requirements have been met," and citing favorably a district court decision concluding that "plaintiffs' assertions that they represented a class of individuals covered by homeowner's policies for homes

---

[16] We also recognize that some other circuits disagree. *See In re Sprint Nextel Corp.*, 593 F.3d at 674 (7th Cir.) (rejecting as "guesswork" the assumption that "at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses for their cell phone bills are probably Kansas citizens"); *Marcus & Millichap*, 991 F.3d at 1157 (11th Cir.) ("In cases where plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state."); *see also Hargett*, 854 F.3d at 966 (8th Cir.) (stating that "merely alleging residency was not enough"); *Nichols*, 718 F. App'x at 741 (10th Cir.) (similar); *cf. Mondragon*, 736 F.3d at 884, 886 (9th Cir.) (stating that the fact "[t]hat a purchaser may have a residential address in California does not mean that person is a citizen of California," while ultimately "declin[ing] to reach" the question of whether to "treat a person's residence as prima facie evidence of the person's domicile").

located in Louisiana[] created a reliable presumption that the class was comprised of Louisiana citizens" (citing *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 367 (E.D. La. 2007))); *cf. Adams*, 958 F.3d at 1223 (9th Cir.) (concluding that plaintiff met burden to show 33% in-state class citizenship for purposes of discretionary remand where she "offered evidence showing that more than 90% of class members had last known mailing addresses in California," because even though "last known mailing addresses are not a direct proxy for residence, and residence is not a direct proxy for citizenship," "the substantial cushion afforded by the percentage of class members with last known California addresses, as compared to the percentage of class member citizens required for a discretionary remand," meant she "readily met her burden").

We emphasize that this presumption is rebuttable. And the burden on defendants to rebut the presumption will depend on the specific facts of the case. For example, residency is weaker evidence of citizenship where a significant percentage of the class can be expected to be only temporary residents—such as where a large number of class members are residents of a university campus, a military base, or an area with many vacation homes. *See Mason*, 842 F.3d at 395. By contrast, property ownership is a "strong indicator of domicile," so defendants faced with evidence that the plaintiff class is largely made up of residents who own their homes will have a more difficult time rebutting the presumption that those residents are citizens. *Id.*

Turning to the case at hand, Plaintiffs counted as citizens only those individuals whose principal residence was listed on SDAT's website as a residence in Maryland. Under

31

Maryland's regulations—which SDAT's website cites[17]—the "principal residence" for these purposes "is the one dwelling where the homeowner regularly resides and is the location designated by the owner for the legal purposes of voting, obtaining a driver's license, and filing income tax returns." Md. Code Regs. 18.07.03.01. The individual class members are thus residents of Maryland, triggering the rebuttable presumption of citizenship. Further, because the proposed class is "all real property owners whose property is located within a 4000-foot radius of the TV Tower on or after May 28, 2022," the individual class members are people who not only have their principal residence within Maryland, but also own property within Maryland. J.A. 21. That is more than enough to meet Plaintiffs' burden in this case.

Defendants cite no contrary evidence. Instead, they quibble that "Plaintiffs failed to include any data regarding the timeframe or year(s) for which any property owners declared any properties as a 'principal residence.'" Skyline Opening Br. at 12.

The relevant timeframe, for purposes of the statute, is "the date of filing of the complaint," which in this case was May 10, 2023. 28 U.S.C. § 1332(d)(7). Greeley averred that she performed the searches in question "following Defendants' filing of their Notices of Removal," meaning sometime between Defendants' filing of the notice on June 23, 2023, and when she filed her first affidavit on July 24, 2023. J.A. 143. The data comes directly from Maryland's Department of Assessments and Taxation, which needs up-to-

---

[17] *See How to Change a Property Owner's Mailing Address*, Md. Dep't of Assessments & Tax'n, https://dat.maryland.gov/realproperty/Pages/Change-Owners'-Real-Property-Mailing-Address.aspx [https://perma.cc/3PVV-QR64] (last visited July 29, 2025).

date data for purposes such as assessing property taxes. Its website states that "[y]ou can obtain ownership and value information about every parcel of real property in" Maryland from the Real Property Data Search database, which "is updated Tuesday–Saturday." *Services and Data Available*, Md. Dep't of Assessments & Tax'n, https://dat.maryland.gov/Pages/Services.aspx [https://perma.cc/RT4P-RXH4] (last visited July 29, 2025). Defendants provide no reason to think this government-provided data was not current at the time of Greeley's search. *Cf. Reddy v. Buttar*, 38 F.4th 393, 400 (4th Cir. 2022) (noting that, for purposes of personal jurisdiction, "once established, a domicile 'is presumed to continue until it is shown to have been changed,' with the burden of proof residing with the person claiming the domicile has changed" (quoting *Mitchell v. United States*, 88 U.S. (21 Wall.) 350, 353 (1874))).

Accordingly, we conclude that the district court correctly determined that Plaintiffs satisfied their burden on the citizenship element.

C.

The local-controversy exception also requires Plaintiffs to demonstrate that "at least 1 defendant is a defendant" (a) "from whom significant relief is sought by members of the plaintiff class," (b) "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class," and (c) "who is a citizen of" Maryland. 28 U.S.C. § 1332(d)(4)(A)(i)(II). We have previously labeled this "the 'at least 1 defendant' rule." *Quicken Loans*, 737 F.3d at 964. Because TTI is the only Maryland-citizen defendant, Plaintiffs must satisfy this element as to TTI to be able to invoke the local-controversy exception. We conclude that they have done so.

33

This Court has only considered the meaning of the "at least one defendant" rule once, in our 2013 opinion in *Quicken Loans Inc. v. Alig*, 737 F.3d 960. However, there, we did not evaluate the meaning of "significant basis" or "significant relief," instead resolving only the question of whether several local defendants could be aggregated for purposes of determining whether this element was met. So, this case presents an opportunity to flesh out what the statute means by "significant relief" and "significant basis."

We face two questions: first, can there be more than one defendant who satisfies the "significant relief" and "significant basis" prongs, or must a local defendant be the defendant against whom *the most significant relief* is sought and whose conduct forms *the most significant basis* of the action? Second, if a local defendant need not be superlatively significant in this way, how significant must the basis and relief be to qualify?

TTI contends that the answer to the first question is that the local defendant must be *superlatively* significant. *See* Oral Arg. at 43:25–43:35, https://www.ca4.uscourts.gov/ OAarchive/mp3/24-0141-20250508.mp3 ("The local defendant needs to be more significant [than the out-of-state defendant] because that is the anchor by which the court will decide to treat it as a purely local controversy under th[e] exception."). That is plainly wrong.

In *Quicken Loans*, we noted that the statute refers to "at least 1 defendant" and that "[u]nder common parlance, the term 'at least' permits a reading that more than one defendant could satisfy the stated criteria." *Quicken Loans*, 737 F.3d at 965. So, we concluded, the local defendants could be aggregated to determine whether they satisfied this prong. We imagined "a putative class action wherein all twenty named defendants,

34

except one, reside in the same state. There is no dispute that the one out-of-state defendant is an insignificant defendant for purposes of relief and the basis of the suit. The remaining nineteen in-state defendants are 99.99 percent liable and meet the 'significant relief' and 'significant basis' factors as a group and in equal proportion to each other—5.26 percent each." *Id.* We took the view that, even if each local defendant would not be "significant" alone, the statute was plainly satisfied because local defendants as a group obviously were.

This case presents a slightly different question, but the answer here is even more straightforward under the language of the statute. *Quicken Loans*'s insight that "at least 1" means that more than one defendant could satisfy the significance prong directly applies in a situation like this one. That is, if there are two or three or four defendants with roughly equal (or even unequal, but still significant) liability, more than one could satisfy the "significant relief" and "significant basis" requirements. Put more concretely, if a complaint named three defendants and alleged that the local defendant was 25% liable, one out-of-state defendant was 40% liable, and the other out-of-state defendant was 35% liable, *all three* would be "significant" so long as 25% liability suffices for significance. So, here, it doesn't matter if Skyline is allegedly *more* liable than (or *just as* liable as) TTI, so long as Plaintiffs seek "significant relief" from TTI and TTI's conduct "forms a significant basis" for the claims.

The First Circuit's recent decision in *Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, 121 F.4th 228 (1st Cir. 2024) (per curiam), is instructive. *Kress Stores* noted that the circuits "have largely followed the . . . [comparative] approach to the 'a significant basis' element of CAFA's local controversy exception" put forward in the Third

Circuit's *Kaufman v. Allstate New Jersey Insurance Co.* decision. *Kress Stores*, 121 F.4th at 239 (citing *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009)); *see id.* at 239 n.6 (collecting cases). As *Kress Stores* explained, *Kaufman*'s "test is relative: . . . . 'If the local defendant's alleged conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied. Whether this condition is met requires a substantive analysis comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants.'" *Id.* at 239 (quoting *Kaufman*, 561 F.3d at 156).

*Kress Stores* elaborated, however, that "courts adopting *Kaufman*'s comparative approach have split over its application to . . . claims alleging that local and non-local defendants 'all engaged in the same conduct.'" *Id.* at 240 (quoting *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1094 (8th Cir. 2021)). While some have found such allegations sufficient to show significance, others "have required some sort of plus-factor in the allegations of a local defendant's conduct (as compared to non-local defendants' conduct) to count the local defendant's conduct as 'a significant basis' of the plaintiffs' claims." *Id.* (collecting cases).

TTI seems to urge this Court to adopt a standard akin to the plus-factor analysis, arguing that "the local defendant's conduct cannot be 'significant' if the alleged importance is either equivalent or collective." TTI Opening Br. at 16; *see also* Oral Arg. at 11:50–12:13, 43:00–43:17. But we agree with the First Circuit's rejection of that analysis in *Kress Stores*, where it held that "CAFA's use of the phrase 'a significant basis' requires a comparative analysis to determine whether the defendant's alleged conduct is 'an *important* ground for the asserted claims in view of the alleged conduct of all the

36

Defendants.' But it does not follow that the test must be *superlative*, as the requirement of a plus-factor would have it." *Kress Stores*, 121 F.4th at 241 (quoting *Kaufman*, 561 F.3d at 157). Such an interpretation "would rewrite 'a significant basis' in the statute into '*the most significant basis*.'" *Id.*; *accord Walsh v. Defs., Inc.*, 894 F.3d 583, 592 (3d Cir. 2018) ("[T]he local controversy exception does not require that the local defendant's conduct be *the most* significant conduct or that it predominates over claims against other defendants.").

Notably, in describing another exception (the home-state exception), CAFA uses a different term absent from the local-controversy exception: it refers to "*the primary* defendants*.*" 28 U.S.C. § 1332(d)(4)(B) (emphasis added). While not an absolute rule, there is a "generally useful . . . interpretive principle" of statutory construction that "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Because the local-controversy exception requires only that the local defendant be "significant," while the home-state exception refers to "*the primary* defendants," a review of the statute as a whole supports that the local-controversy does *not* require that the local defendant be superlatively "primary," but merely "significant."

Our interpretation is also supported by the CAFA Senate Report, "which contains the Senate Judiciary Committee's views with respect to CAFA jurisdiction," and on which "[b]oth the Supreme Court and our Court have heretofore had occasion to rely." *Dominion Energy*, 928 F.3d at 336 n.11 (collecting cases). The Report states that "there must be *at least one* real local defendant. By that, the Committee intends that the local defendant must be *a* primary focus of the plaintiffs' claims—not just a peripheral defendant. The defendant

37

must be *a* target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being *a* defendant whose alleged conduct forms a significant basis for the claims asserted by the class." S. Rep. No. 109-14, at 40 (2005) (emphasis added). The Report's use of the indefinite article—"a," not "the"—suggests that Congress did not intend to require that the local defendant be superlatively significant.

Accordingly, we follow the First Circuit's lead and adopt *Kaufman*'s comparative approach while noting that "such comparisons must admit the possibility (clear from CAFA's text) that more than one defendant's conduct can be 'a significant basis' of the plaintiffs' claims." *Kress Stores*, 121 F.4th at 241. Here, that means that it doesn't matter whether Skyline is a significant defendant, so long as TTI is.

That leaves the question of what "significant" means. "Several dictionaries offer complementary definitions of 'significant,' with each suggesting that the word essentially means 'important' or 'characterized by a large amount or quantity.'" *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1118 (9th Cir. 2015). The Senate Report similarly indicates that the defendant must be "a primary focus," "not just a peripheral defendant" or "isolated role player." S. Rep. No. 109-14, at 40. The Ninth Circuit has found the element satisfied where the local defendant's "activities constituted between 15 to 20% of the [challenged] activities of all the Defendants." *Benko*, 789 F.3d at 1119; *cf. Kaufman*, 561 F.3d at 157 (vacating district court decision where local defendant sold 13% of all policies in the state, not because 13% was insufficient, but because not all policies sold necessarily violated the law, and therefore the district court's calculation had not properly focused on the alleged conduct). By contrast, in unpublished authority, the Eleventh Circuit has stated that 4.5%

liability is insufficient and suggested that 14% would also be insufficient. *Lemy v. Direct Gen. Fin. Co.*, 559 F. App'x 796, 798 & n.1 (11th Cir. 2014) (per curiam). Similarly, the hypothetical example we contemplated in *Quicken Loans* implied that 5.26% liability would not be "significant." *Quicken Loans*, 737 F.3d at 965.

We need not adopt a specific numerical threshold to resolve this matter because we conclude that the allegations in this case easily clear the significant-basis and significant-relief hurdles.

The complaint alleges that TTI owns the TV tower; knew by the 1980s that it was coated in lead-based paint; was aware that the paint would deteriorate over time; and knew that hydroblasting would dislodge lead paint recklessly and dangerously.[18] Nevertheless, it allegedly contracted with Skyline; failed to verify that Skyline was appropriately accredited, licensed, or trained to perform the work (which it was not); and failed to obtain the appropriate permit or notify local authorities prior to undertaking the work.

TTI is thus not a peripheral player, but rather is one of two defendants, *both* of whom are central to the allegations in the complaint. Plaintiffs seek to hold TTI responsible not only for the actions of the company it hired to perform the work, but also for its *own* negligence in failing to obtain the proper permits and failing to hire a properly accredited company to undertake work it knew would be hazardous to the surrounding community. That means the relief sought against TTI is substantial, even if Skyline was the entity

---

[18] Knowledge and ownership may not themselves be "conduct," as CAFA uses the term. 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb); *see Conduct, Black's Law Dictionary* (12th ed. 2024) ("Personal behavior, whether by action or inaction[.]") Because TTI's conduct remains significant even if we omit those allegations, we do not resolve the issue.

39

actually tasked with the hydroblasting. *See Goldberg*, 2024 WL 1050942, at *15 (district court concluding that "if Plaintiffs meet their burdens as to Counts I and II, TTI's liability could meet (or exceed) that of Skyline").

The Ninth Circuit provided helpful analysis in a similar case, *Allen v. Boeing Co.*, in which a class sued Boeing (an out-of-state defendant) and Landau Associates (a local defendant). *Allen v. Boeing Co.*, 821 F.3d 1111, 1113 (9th Cir. 2016). It alleged that Boeing had caused pollution at its manufacturing plant from the 1960s to 1990s. *Id.* at 1114. In 2002, Boeing contracted with Landau to conduct remediation. *Id.* Also in 2002, and again in 2009, Boeing and Landau became aware of new pollution issues, but "failed to take reasonable actions to investigate and remediate" those issues. *Id.* In a 2013 lawsuit brought in state court, the plaintiffs sued Boeing for negligence, nuisance, and trespass; sued Landau for negligence; and sought damages from both. *Id.* at 1115. Boeing removed the case to federal court pursuant to CAFA and appealed after the district court granted the plaintiffs' motion to remand pursuant to the local-controversy exception. *Id.* at 1113.

The Ninth Circuit affirmed. *Id.* at 1113–14. It concluded that the plaintiffs had shown that they sought significant relief against the local defendant, Landau, and that its actions constituted a significant basis for relief. The court held that, while "Boeing's activities over several decades created the hazardous" pollution, "it does not follow that Boeing's liability (if any) for creating the pollutants necessarily dwarfs Plaintiffs' claims against Landau" because "[i]f Landau is shown to have failed, for more than a decade, to remediate the spreading toxic chemical plumes, its liability could be as great as Boeing's." *Id.* at 1118–19. While the facts here are of course different, the point remains that just

because one defendant is alleged to be a major polluter does not mean that another defendant cannot be alleged to be significantly liable for its *own* negligence related to that pollution.

Before closing, we note that TTI appears to argue that, because the complaint includes a claim solely against Skyline (Count II), Plaintiffs cannot show that the alleged conduct "forms a significant basis for *all* the claims asserted in the action," as the Third Circuit required in *Kaufman*. *Kaufman*, 561 F.3d at 155 (emphasis added). If that is what TTI means, it misreads *Kaufman*, which clarified that "[t]he [local-controversy] provision does not require that the local defendant's alleged conduct form a basis of *each* claim asserted; it requires the alleged conduct to form a *significant basis* of *all* the claims asserted." *Id.* (third emphasis added). *Kaufman* elaborated that, "[w]hile assessing the quantity of claims based on the local defendant's alleged conduct may be useful to the analysis, the significant basis provision does not establish an absolute quantitative requirement. Nor is it necessary to imply such a quantitative requirement to make sense of the provision, for a party's conduct may form a significant basis of an entire set of claims even if some claims within the set are not based on that conduct." *Id.* at 155–56. We agree: nothing in the statute indicates that, if there is even a single claim not asserted against the local defendant, the local-controversy exception does not apply.

## IV.

For the foregoing reasons, we conclude that we have jurisdiction over this appeal under § 1291. We dismiss Defendants' petitions for review under § 1453 as unnecessary. And we affirm the district court's conclusion that the local-controversy exception applies

41

42

and that remand to the state court is required.

*AFFIRMED; PETITIONS FOR*
*REVIEW DISMISSED*

42